### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES GAUNT, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-7817** |
| **LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION, ET AL** | **SECTION: "C" (2)** |

### <u>ORDER AND REASONS</u>

Before the Court are: (1) a Motion to Dismiss Pursuant to Rule 12(c) filed by

Lafayette Insurance Company ("Lafayette") (Rec. Doc. 70); (2) a Motion for Judgment

on the Pleadings filed by State Farm Fire and Casualty Company ("State Farm") (Rec.

Doc. 77); and, (3) a Motion to Dismiss Pursuant to Rule 12(c) filed by Allstate Insurance

Company ("Allstate") (Rec. Doc. 79).  The plaintiffs oppose the motions.  The motions

were taken under submission after oral argument.  Having considered the arguments of

counsel, the record and the applicable law, the Court finds that all of the motions are

**GRANTED**.

I. B<small>ACKGROUND</small>

The plaintiffs brought this suit as a putative class action in the Civil District

Court ("CDC") for the Parish of Orleans, State of Louisiana on August 28, 2006.  The

putative class consists of Louisiana citizens who purchased valued policy homeowners

insurance from one of three defendants, State Farm, Allstate or Lafayette (collectively,

"defendants").[1]  Insurance policies are deemed "valued policies" when the premiums

charged are calculated, in part, in relation to the value of the insured property.  Here,

the plaintiffs allege that their property values declined as a result of damage caused by

Hurricanes Katrina and/or Rita, but their insurers continued to charge premiums based

on the pre-storm values of their properties.  The plaintiffs assert that the insurers knew

of the depressed values of their properties, because the defendants adjusted the

plaintiffs' insurance claims after the storms, and should have adjusted their insurance

premiums accordingly. The plaintiffs brought this putative class action suit seeking

refunds of the amounts that they were allegedly overcharged for insurance premiums

after the storms.  They argue that the defendants' conduct amounts to conversion and

unjust enrichment.

On October 11, 2006, State Farm removed the action to this Court asserting

---

[1]       Louisiana Citizens Property Insurance Corporation ("Citizens") was the
fourth defendant.  However, the plaintiffs voluntarily dismissed their claims against
Citizens and notified the Court that they intend to re-file these claims in the state court.
Rec. Doc. 75.

jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA") and other statutes.  The plaintiffs filed a motion to remand which the Court denied on January 16, 2007.  The Court held that the "local controversy" exception to the CAFA did not apply to this action and found that it does have jurisdiction to hear this matter under the CAFA.

The same day the Court denied the plaintiffs' motion to remand, it also denied Allstate's first motion to dismiss.  In that motion, Allstate moved to dismiss on the grounds that there was no cause of action stated against it because none of the named plaintiffs were insured by Allstate.  Instead of granting Allstate's motion, the Court permitted the plaintiffs to substitute named plaintiffs to include some Allstate insureds.  Accordingly, the plaintiffs filed their first amended complaint on April 16, 2007, which substituted Joseph and Ann Duplessis ("the Duplessises") as the representative plaintiffs asserting claims against Allstate.  Otherwise, the first amended complaint is virtually identical to the original complaint.

Then, on April 13, 2007, the plaintiffs moved for class certification.  That motion was noticed for hearing on May 16, 2007.  However, the hearing on the plaintiffs' class certification motion was continued to July 11, 2007 to allow the parties time to meet with Magistrate Judge Wilkinson to discuss scheduling.  That scheduling conference was held on May 16, 2007.

In the meantime, the defendants moved to strike the class allegations.  That motion was argued on May 30, 2007.  At the oral argument, the motion to strike was dismissed without prejudice and the defendants were ordered to file any Rule 12(b) or 12(c) motions to dismiss by June 12, 2007.  Those motions were argued before the Court on June 27, 2007 and taken under submission.

## II. STANDARD OF REVIEW

The standard for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6).  *See Great Plains Trust Co. v. Morgan Stanley Dean Whitter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002).  Thus, when considering a Rule 12(b)(6) or a Rule 12(c) motion, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim," the Rule 12(c) motion should not be granted.  *Id.* at 284-285 (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  However, conclusory allegations or legal conclusions masquerading as factual conclusions will not defeat the motion.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931

4

(5th Cir. 1995) (*citing Fernandez-Montes*, 987 F.2d at 284)).

When a party brings a Rule 12(b)(6) or 12(c) motion, but seeks to introduce evidence beyond the pleadings, the Court can choose to consider the evidence and convert the motion to a motion for summary judgment.  FED. R. CIV. P. 12(b); *see also Smith v. Tarrant County Hospital Dist.*, 691 F.2d 207, 208 (5th Cir. 1982).  If the Court chooses to consider this additional evidence, all parties must be given reasonable opportunity to present all material made pertinent to such a motion for summary judgment by Rule 56.  *Id.*  However, any documents that are referred to in the plaintiff's complaint that are central to the plaintiff's claims are considered to be part of the pleadings and are properly considered when reviewing a motion to dismiss or motion for judgment on the pleadings.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Lafayette, State Farm and Allstate filed motions to dismiss pursuant Rule 12(c) or a motion for judgment on the pleadings and attached and partially rely upon the plaintiffs' insurance policies. This lawsuit concerns post-Katrina and post-Rita insurance premiums.  The first amended complaint references Rosie Lee Caesar's ("Caesar") Lafayette policy at paragraph 2, John and Lori Burns's ("the Burnses") State Farm policy at paragraph 3 and Duplessises' Allstate policy at paragraph 4.  Each paragraph gives the policy number but does not state any specific policy years.  Thus,

the plaintiffs' policies that were in effect at the time of the hurricanes and any renewals of those policies since that time are referenced in the pleadings and properly considered along with the defendants' motions.[2]

## III. ANALYSIS

Lafayette and Allstate brought Rule 12(c) motions to dismiss for failure to state a claim. They contend that their insureds, Caesar and the Duplessises, failed to state claims against them for conversion and/or unjust enrichment. Lafayette and Allstate argue that: (1) their insureds' renewal of their homeowners insurance policies and ratifications of their premiums estops them from claiming conversion; (2) the policy limits and premiums are expressly provided for by contract, thus justified as a matter of law; (3) Lafayette and Allstate did not have a duty to appraise the plaintiffs' properties or decide on appropriate policy limits; and, (4) Emergency Rule 23 prohibited them from unilaterally modifying the limits and premiums of the plaintiffs' policies.

State Farm adopts and reiterates Lafayette's and Allstate's above discussed arguments. Also, State Farm argues that it had no duty to unilaterally reduce the

---

[2] Lafayette also attached documents that were not referenced in the pleadings to its motion to dismiss. Specifically, it attempted to introduce a letter from Caesar's attorney to Lafayette regarding her insurance premiums and her 1999-2000 insurance policy. The Court will not consider this evidence when evaluating Lafayette's motion. However, if the Court had chosen to consider this evidence, the motion would have been treated as one for summary judgment.

insurance coverages and premiums.  It cites its insurance contract with the Burnses, and asserts that, while the contract permits the Burnses to reduce their insurance coverage, there is nothing in the contract that requires State Farm to do so in the case of a loss. State Farm also points out that the insurance contract does not place a duty on it to return insurance premiums in the circumstances described in the complaint.

The plaintiffs, on the other hand, contend that the defendants' reliance on the legal theories of ratification, estoppel, lack of duty and legal excuse are misplaced and misconstrue their allegations.  They argue that nothing in the complaint shows that there has been consent or ratification and that discovery is needed to determine whether or not there really was ratification. The plaintiffs assert that the defendants cannot rely upon Emergency Rule 23 as an excuse because that rule was enacted to protect the insureds, not the insurers.

## CONVERSION

Conversion is an act in derogation of the plaintiff's possessory rights or any wrongful exercise or assumption of authority over another's goods, depriving him of permanent or indefinite possession.  *Bernofsky v. Tulane University Medical School*, 962 F.Supp. 895, 906 (E.D.La. 1997) (*citing Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553 (5th Cir. 1995)).  It is the commission of a wrongful act of dominion over the property of another in denial of or inconsistent with the owner's rights.  *Id.* (*citing Junior*

*Money Bags, Ltd. v. Segal*, 970 F.2d 1 (5th Cir. 1992)).  In order to prevail on a claim of

conversion under Louisiana law, the plaintiff must prove that (1) he owned or had the

right to posses; (2) the defendant's use was inconsistent with the plaintiff's right of

ownership; and (3) the defendant's use constituted a wrongful taking.  *Id.* (*citing*

*Chrysler Credit Corp. v. Whitney Nat'l Bank*, 798 F. Supp. 1234 (E.D.La. 1992)).  However,

when the owner consents to or ratifies the taking of his property, he is estopped from

bringing an action for conversion.  *Blair v. Source One Mortgage Services Corp.*, 1997 WL

250040 (E.D.La. 5/9/1997) (*citing Aymond v. State, Dept. of Revenue & Taxation*, 672 So.2d

273, 276 (La. App. 1st Cir. 1996)).

　　　The defendants argue that the plaintiffs' renewals of their homeowners insurance

policies and ratifications of their premiums estops them from claiming conversion.  The

defendants assert that the plaintiffs' knowing consent to the premiums and limits

specified in the insurance contracts and their payments of those premiums constitutes

ratification.  They analogize the case at bar to *Blair*, another class action that involved

insurance.  In that case, the plaintiffs filed suit for the defendants' alleged failure to

inform them of their right to cancel unnecessary Private Mortgage Insurance ("PMI").

The *Blair* plaintiffs had consented by contract to the collection of the PMI premiums for

the life of their loans.  Thus, the Court found that the *Blair* plaintiffs could not bring a

claim for conversion.  The defendants, herein, argue that *Blair*, stands for the

proposition that consent and ratification estops claims for conversion, "where a plaintiff has consented to the terms of an insurance policy to the collection of insurance premiums over a period of time." Rec. Docs. 70, 77 and 79.

The plaintiffs, on the other hand, argue that they did not consent to or ratify the alleged overcharging of insurance premiums. They contend that they were forced to pay the high premiums or else face losing their insurance coverage, because insurance contracts are "adhesion contracts." They also dispute the defendants' reliance upon *Aymond* and *Blair*. They distinguish the facts of those cases from the facts of the case at bar. The plaintiffs argue that they cannot be held to have consented to the alleged conversion under the precedent set in *Aymond,* because they did not commit the same acts that the *Aymond* Court held constituted the plaintiffs' consent. Similarly, the plaintiffs argue that *Blair* is factually distinguishable. They point out that the *Blair* plaintiffs agreed in their mortgage contracts to pay PMI premiums for the life of their loans and argue that the *Blair* plaintiffs received the benefit of the PMI and "got what they paid for." Rec. Doc. 82. The plaintiffs assert that they did not get what they paid for because the they continued to pay premiums based on the pre-storm values of their properties, while the defendants' coverage responsibilities were reduced by the damage that the properties sustained.

It is immaterial that the facts of *Aymond* and *Blair* are distinguishable from the

case at bar.  The *Aymond* Court did cite examples of actions that constituted the

plaintiffs' consent.  However, regardless of the specific facts that demonstrate consent,

*Aymond* stands for the proposition that when the owner takes some action that shows

consent to or ratification of the taking of his property, he is estopped from bringing an

action for conversion.  Thus, the defendants here only have to show that the plaintiffs

did something that constituted ratification.  They do not have to show that the plaintiffs

took the same ratifying actions as the *Aymond* plaintiffs.

The plaintiffs' renewals of their insurance contracts demonstrates their

ratification of the defendants' retention of the insurance premiums for those policy

years.  By signing the renewal contracts, the plaintiffs agreed to the policy limits and

premiums.  Each of the plaintiffs could have chosen to reduce his or her insurance

coverage if he had found that the pre-storm values were no longer appropriate.  The

plaintiffs argue that they had no choice but to pay the premiums or lose coverage.

However, there is no reason that they could not have reduced coverages.  Notably, the

Burnses decreased their coverage limits.  Also, Caesar and the Duplessises accepted

increases to their policy limits.  The plaintiffs obviously knew that they could changing

their policy limits and premiums.  As a result, their renewals should be deemed

ratifications which preclude the plaintiffs' claims for conversion.  Also, like the *Blair*

plaintiffs, the plaintiffs here "got what they paid for."  In exchange for the premiums

they paid, they received one year of insurance coverage at the agreed upon level.

Furthermore, the plaintiffs argue that whether or not their renewals of their insurance policies constituted ratification is immaterial to the issue of whether or not the defendants' committed conversion for the 2005 policy years. The plaintiffs assert that they did not consent to the defendants' retaining their full premiums after the values of their properties decreased as a result of Hurricanes Katrina and/or Rita.

Conversion requires a "wrongful taking." An insured pays a contracted for insurance premium to the insurer for a contracted for amount of coverage for a specific period of time. By virtue of that contract, the insured consents to the insurer's retention of the premium, even before a covered loss occurs. There is nothing in any of the insurance contracts at issue which states that the insurers must return a portion of the insurance premiums after a loss occurs. Thus, the insurer does not commit a "wrongful taking" by retaining the full insurance premium after such a loss.

### UNJUST ENRICHMENT

The five requirements for establishing a claim of unjust enrichment are that there must be: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and, (5) no other remedy at law available to

the plaintiff.  *Finova Capital Corp. v. IT Corp.*, No. 33,994 (La App. 2 Cir. 12/15/00), 774 So.2d 1129, 1132.  The Louisiana Supreme Court has noted, "if there is a contract between the parties it serves as a legal cause, an explanation for the enrichment. 'Only the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication.'"  *Edwards v. Conforto*, 636 So.2d 901, 907 (La. 1993) (*quoting Edmonston v. A-Second Mortgage Co. of Slidell, Inc.*, 289 So.2d 116, 122 (La. 1974)).  More specifically, "enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee . . . and the enrichee . . ." *Edmonston*, 289 So.2d at 122.

The defendants, relying on the above cited authority, argue that the alleged enrichment arises from the insurance contracts and is thus justified as a matter of law. They assert that each contract period states the limits of coverage and the premiums for those limits.  Accordingly, they argue that any enrichment is justified because the contract is the legal cause for the enrichment.

The plaintiffs disagree.  They argue that the existence of the contract alone is not enough to supply legal cause.  They assert that the contracts did not have provisions that specifically allowed the insurers to do what they did with the plaintiffs' money. The plaintiffs also contend that *Edmonston* stands for the proposition that legal cause only exists if there are specific contractual provisions which govern the situation at

12

hand.  Rec. Doc. 82.  They argue that the *Edmonston* Court declined to find that the contract was a legal cause for the enrichment because "the terms of the contract did not entitled the defendant to do what it did with the plaintiff's money." Rec. Doc. 82.

The *Edmonston* court did not find that the contract was a legal cause for the enrichment.  However, in *Edmonston*, the enrichee attempted to claim legal cause for the enrichment by relying upon a contract that was between the Edmonstons and another party, which did not even contemplate the enrichee.  The court noted that the only juridical act between the Edmonstons and the enrichee was a giving in payment and that no element of that giving in payment entitled the enrichee to the money at issue.

Here, the contracts between the plaintiffs and the defendants are the insurance policies. Unlike *Edmonston*, there are contracts between the impoverishees and the enrichees.  Furthermore, the enrichments are the results of the terms of valid juridical acts between the plaintiffs and defendants.  The insurance policies contemplate the plaintiffs' payment of premiums which are, in part, based upon the values of their properties in return for the benefit of the insurance coverage.  It is implied that the defendants are permitted to keep all premiums even if there is a loss which decreases the property values.  As described above, when the plaintiffs entered into the contracts, they understood that they were paying the premiums for the year's worth or coverage, no matter what happened.

## DUTY

The defendants argue that the plaintiffs have failed to state a claim because they do not have a duty to unilaterally appraise the plaintiffs' properties, reduce coverage limits and refund or reduce premiums.  They analogize themselves to insurance agents and cite the many cases in which this Court has found that insurance agents do not have a duty to independently appraise a policyholder's property and determine what coverages are appropriate. The defendants assert that the insureds, not the insurance companies, are in the best position to evaluate their insurance needs and insist that they do not have a duty to reduce coverage limits and premiums after a loss.

The plaintiffs point out that the cases relied upon by the defendants pertain to insurance agents, not insurance companies.  Also, they contend that they are not trying to impose any such duty on the insurance companies.  Instead, they assert that their claim is that the defendants knew that their property values had decreased by virtue of their filing claims after Hurricanes Katrina and/or Rita and as a result the insurers should have returned the "unearned premiums charged and collected based upon pre-Katrina or pre-Rita values." Rec. Doc. 82.

The Court is not aware of any precedent which states that an insurer has a duty reduce coverage limits and premiums on valued policy homeowners' insurance policies after a loss.  Without such a duty, there is no other way to impose the responsibility on

14

the insurers to return the allegedly "unearned premiums."  After all, the defendants

have contracts with the plaintiffs to provide the contracted for amount of insurance at

the contracted for premium for one year.  In light of these contracts, the insurers cannot

assume that all insureds want their policy coverage limits and premiums decreased

immediately after a reported loss, without the insureds specifically asking for such

reductions.   Thus, the plaintiffs have not stated a claim.

**EMERGENCY RULE 23**

Emergency Rule 23 applies to any and all types of personal residential,

commercial residential or commercial property insurance covering a dwelling,

residential property or commercial property located in Louisiana that sustained damage

as a result of Hurricane Katrina or Rita.  Emergency Rule 23 § 4303.  Section 4305 of

Emergency Rule 23 suspends the right of insurers to not renew or cancel insurance

policies until 60 days after the substantial completion of the repair and/or

reconstruction of the insured property or until Emergency Rule 23 is terminated by the

Louisiana Commissioner of Insurance ("Commissioner").  On May 31, 2006 the

Commissioner issued Advisory Letter No. 06-03, which stated that the continuation,

extension or renewal of coverage pursuant to Emergency Rule 23 "must maintain a

policyholder at the previous premium/rate structure and with the same terms and

conditions as previously written, subject only to a change to the premium/rate structure

that is based on objective criteria. *Dillard University, et. al. v. Lexington Insurance Co., et. al.*, 466 F.Supp.2d 723 (E.D.La. 2006). The purpose of Emergency Rule 23 is to "afford maximum consumer protection for the insureds of Louisiana." Emergency Rule 23 § 4321A. However, Emergency Rule 23 also maintains the insured's right to modify his or her insurance policy. Specifically, Emergency Rule 23 provides that an insured can voluntarily cancel or not renew his own insurance policy or enter into an agreement with an insurer to modify, the coverage, limits and terms of the policy. Emergency Rule 23 § 4311.

The defendants argue that Emergency Rule 23 prohibited them from unilaterally reducing coverage limits and premiums, as the plaintiffs contend they should have. They also point out that, although they were prohibited from taking such actions, the plaintiffs retained the right to voluntarily change their coverage limits and, consequently premiums.

The plaintiffs argue that the defendants cannot rely on Emergency Rule 23. They assert that the insurers are prevented from relying on Emergency Rule 23 as a defense because it is for their benefit, not the insurers'. Also, the plaintiffs claim that the reductions they seek are changes to the premium/rate structure that are based on objective criteria that are permitted by Emergency Rule 23.

As stated above, Emergency Rule 23 required the defendants to maintain the

16

plaintiffs' insurance policies at the same premiums and coverages unless the plaintiffs voluntarily requested changes or any changes were based upon objective criteria. At this point, the Court cannot determine whether or not the insurers had or could have had objective criteria to reduce the premiums and coverages in the manner suggested by the plaintiffs.  Therefore, the Court cannot grant the defendants' motions based on their Emergency Rule 23 defenses.

**IV. C**ONCLUSION

For the reasons stated above,

IT IS ORDERED that:

(1) Lafayette's Motion to Dismiss Pursuant to Rule 12(c) (Rec. Doc. 70) is hereby **GRANTED**.

(2) State Farm's Motion for Judgment on the Pleadings (Rec. Doc. 77) is hereby **GRANTED;** and,

(3) Allstate's Motion to Dismiss Pursuant to Rule 12(c) (Rec. Doc. 79) is hereby **GRANTED**.

IT IS FURTHER ORDERED that, in light of these dismissals, the plaintiffs' Motion for Class Certification (Rec. Doc. 45) is hereby **DISMISSED**.

New Orleans, Louisiana this 29th day of June, 2007.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE